M. M. MURRAY and others v. HENRY S. SPENCER.

*Ejectment—Deed—Boundaries—Natural objects.*

1. Where a natural object (for instance a stump) is called for as the beginning corner of a tract of land, and the reputation for thirty years has pointed to that object as the corner, it is error to hold that this constitutes *no evidence* of the fact that a line beginning at that point, and corresponding with the first call of the grant, was actually run and marked.

2. Where the description in the grant calls for a marked tree and also the line of another tract, which are inconsistent, the issue is one of fact and not of law. Which description will control. *Quære.*

(*McNeill* v. *Massey*, 3 Hawks, 91; *Icehour* v. *Rives*, 10 Ired., 256; *Dula* v. *McGhee*, 12 Ired., 332, cited and approved).

CIVIL ACTION tried at Fall Term, 1882, of HYDE Superior Court, before *Gilliam, J.*

The plaintiffs appealed.

*Mr. Geo. H. Brown, Jr.,* for plaintiffs.
*Mr. W. S. Mason,* for defendant.

RUFFIN, J. This is an action of trespass upon lands, in which the defendant admits having entered upon the *locus in quo,*

but claims to have the title thereto; and the case turns upon the location to be given to a certain grant known as the "Large Turner Patent."

On the 25th day of October, 1872, two grants for lands lying in Hyde county were issued to William Turner, which purported to be based upon entries and surveys made upon the same day with each other.

The smaller one (known in the case as the "former entry") conveyed to him one hundred and fifty acres, and its location was established on the trial. The larger one conveyed to him six hundred and forty acres described as "a tract lying on the west side of Juniper Bay creek, and *on back of former entry*, beginning at a marked black-gum, and running thence east, &c."

The defendant contended that this beginning corner was at a point in the northern line of the smaller grant ("former survey"), and if so it was conceded that he was not guilty of the trespass; whereas the plaintiff contended that it was at a black-gum stump found a few yards south of the point contended for by the defendant, and if so, he was guilty.

On the trial, a jury being waived, it was agreed that the court might find the facts and declare the law thereon.

For the purpose of establishing the gum as the corner, the plantiff introduced three witnesses, who testified that for over thirty years the black-gum had been reputed to be the beginning corner of the "large Turner grant," and one testified that the spot was pointed out to him as such, more than thirty years before, though at the same time he was told that another point was also spoken of as being that corner.

"This testimony," the case states, "the court found to be true, and the facts testified to to be established by the plaintiff, but held as a conclusion of law, upon these facts, that in the absence of proof of the actual running of the line from the black-gum east, at the original entry or survey, the beginning of the 640-acre Turner patent is in the northern line of the 150-acre Turner patent, and that upon these facts proved, the call for the

beginning, "back of his former entry," is not overcome by the facts found, and thus locating the larger grant, he held the defendant to be not guilty.

We are not sure that we have been able to catch the exact import of His Honor's conclusion: but we understand it to be— and so did counsel who argued the cause before us—that although satisfied by the proofs offered by the plaintiff, that for more than thirty years the black-gum has borne the reputation of being the beginning corner of the "large Turner grant," still, inasmuch as the plaintiff could not show that there was a line beginning at that point, and corresponding with the first call of the grant, actually run and marked, at the date of the original survey, he felt constrained, *in law*, wholly to disregard the circumstance of its reputation, and because the land was described as being "back of the former entry," to fix its beginning corner in the line of the smaller grant. As thus understood we cannot give it our concurrence.

In the first place, to describe one tract of land as being *back* of another does not, *ex vi termini*, imply that the two are contiguous, but may be intended as nothing more than a mere general indication of the direction in which it lies; and the probability of such being the case would be much strengthened by the fact, which is shown to exist in this case, that the two were actually surveyed at the same time and by the same surveyor. If contiguous, and more especially if one should start in the line of the other, it is difficult to believe but that, under such circumstances, some more certain testimonial of that fact would be resorted to than is contained in the patent now under consideration; and very sure it is, we think, that no such artificial weight should be given to a description so doubtful and shadowy as this, as to render incompetent and unfit to be considered by a jury contradictory evidence depending upon a long continued and well established reputation—and such we understand to be, in effect, His Honor's ruling.

But passing this by, and supposing the line of the *former entry*

and the black-gum to have been both specifically called for, then, when the two appeared not to be identical, but to be at different points, it would necessarily become a question of fact to be determined upon evidence *dehors* the instrument, as to which was the point from which the survey was actually made. Such evidence would be heard, not to contradict the deed, but to determine a latent ambiguity in the instrument itself. Such seems to have been His Honor's understanding, and hence he was willing to admit, and did admit, evidence in regard to the matter; but the error committed was, that after hearing the evidence he determined the question as one of *law*, whereas, it was purely one of *fact*. *McNeill* v. *Massey*, 3 Hawks, 91.

It was another error, too, to hold that the testimony, offered as to the reputation of the black-gum, afforded *no* evidence of the fact that it was marked as a corner at the date of the original survey. This much is implied in its very reputation as the corner, and the evidence which establishes that reputation, must, if credited, connect with it every quality necessary to make it such.

In *Icehour* v. *Rives*, 10 Ired., 256, this very point was decided, and it was held that the reputation which a certain stump has as being a corner, was, if credited, sufficient to show that the corner was there, though in fact it bore no marks, and no witness had ever seen marks upon the tree while standing; and this must of necessity be so, or else the very flow of time, which should give sanctity and security to titles, will ultimately undermine them, by destroying the perishable objects denominated as their boundaries, and removing the witnesses acquainted with their localities.

If His Honor had held the evidence in regard to the reputation of the black-gum to be unsatisfactory, and in fact insufficient to control the reference, contained in the grant, to the older survey, that would have put an end to the plaintiff's case. But to hold it as he did, to be *no evidence* of the fact sought to be established, implies that he regarded it as incompetent, and

that he did not consider it in determining the corner, because he did not feel authorized in law to do so.

It is singular that it should be so, but the point seems never to have been directly presented or decided in this state, as to which should control, a marked tree or the line of another tract, when both are called for and are found to be inconsistent. In *Dula* v. *McGhee*, 12 Ired., 332, it is incidentally alluded to, and as far as any preference is manifested, it appears to be awarded to the marked tree, as being more permanent and particular. But much, it would seem in such a case, should depend upon the character of the line called for, its age, certainty, and length, and stability of its reputation; and as it does not appear to us how the line of the former entry was established in this case, we are unable to say to which of the two incompatible descriptions precedence should be given.

For the errors suggested, the court thinks the plaintiff entitled to a *venire de novo*.

Error.                                    *Venire de novo.*